**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Kenneth McCALL, Appellant.**

Superior Court of Pennsylvania.

Submitted July 24, 2006.

Filed Nov. 16, 2006.

---

David S. Nenner, Philadelphia, for appellant.

Hugh J. Burns, Jr., Asst. Dist. Atty., Philadelphia, for Com., appellee.

BEFORE: HUDOCK, STEVENS, and TAMILIA, JJ.

OPINION BY STEVENS, J.:

¶ 1 This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County, which at the conclusion of Appellant's waiver trial convicted him of possession with intent to deliver a controlled substance (PWID)[1] and criminal conspiracy to deliver a controlled substance (conspiracy).[2] Appellant now challenges the sufficiency and weight of the evidence, and contends the court impermissibly shifted the burden of proof unto him. We affirm.

¶ 2 The trial court opinion aptly describes the pertinent factual and procedural history as follows:

On November 6, 2004, at approximately 11:30 a.m., Police Officer Staycee Harris set up surveillance on the 1500 block of Myrtlewood Street in Philadelphia, Philadelphia County, from where he observed appellant and co-defendant, Spencer Rogers, standing on the west side of the street about five feet away from a drainpipe. At approximately 11:35 a.m. Officer Harris witnessed an unidentified male approach appellant and Mr. Rogers, engage them in conversation, and then hand Mr. Rogers an unknown amount of United States Currency. After this exchange, Mr. Rogers walked to the nearby drainpipe inside from which he retrieved a clear plastic baggie, believed by Officer Harris to contain drugs. Officer Harris witnessed Mr. Rogers withdraw an item from the baggie, place the baggie back inside the drainpipe, and then walk back over and hand the item to the unidentified male, who afterwards left the area. All during this transaction appellant stood watch, looking up and down the length of Myrtlewood Street. Although Officer Harris gave a description of the unidentified male to backup officers, they were unable to locate him.

At approximately 11:47 a.m., Officer Harris observed another male, later identified as Willie Adams, approach appellant and Mr. Rogers and engage them briefly in conversation before handing Mr. Rogers Unites States currency. Again, as appellant looked up and down the street, Mr. Rogers walked over to the drainpipe, retrieved the same plastic baggie from which he removed more items, placed the baggie back inside the drainpipe, and then handed the withdrawn items to Mr. Adams. This time, upon completing the sale, Mr. Rogers handed an unknown amount of United States currency to appellant. Moreover, pursuant to Officer Harris' description, backup officers stopped Mr. Adams as he walked north-

1. 35 P.S. § 780–113(a)(30).    2. 18 Pa.C.S.A. § 903.

bound and recovered one clear packet of crack cocaine.

At approximately 12:00 p.m., Officer Harris saw yet another male, Eric Anderson, approach appellant and Mr. Rogers and hand Mr. Rogers more United States currency. After receiving this money Mr. Rogers again reached inside the drainpipe, retrieved more items from the plastic baggie, and then replaced the baggie inside the pipe before handing Mr. Anderson the items withdrawn. Based on Officer Harris' description, backup officers pursued Mr. Anderson as he left the area and recovered one clear Ziploc packet containing crack cocaine. All during this transaction, appellant again stood watching northbound and southbound all along Myrtlewood Street.

Once more, at approximately 12:04 p.m., Officer Harris observed a male by the name of James Ingram approach appellant and Mr. Rogers, give Mr. Rogers United States currency, and then wait as Mr. Rogers reached inside the drainpipe for a fourth time to retrieve the plastic baggie. Same as before, appellant kept watch as Mr. Rogers withdrew another item, placed the baggie back inside the pipe, and then handed the withdrawn item to Mr. Ingram, who thereafter proceeded to walk away. Upon completion of this transaction, Mr. Rogers again gave U.S. currency to appellant. Like Mr. Adams and Mr. Anderson, Mr. Ingram was apprehended a few blocks away by backup officers, who recovered one Ziploc packet containing crack cocaine.

Finally, at approximately 12:30 p.m., after witnessing what he believed to be four drug sales, Officer Harris gave a description of appellant and Mr. Rogers to backup officers who subsequently placed the two men under arrest. At Officer Harris' direction, Officer Frames reached inside the drainpipe and retrieved the plastic baggie, which contained 34 Ziploc packets holding over 5 grams of crack cocaine. The officers also recovered $64 in cash from Mr. Rogers and $1,508 in cash from appellant, mostly in small denominations.

Trial Court Opinion dated 11/30/05 at 2–4.

¶ 3 Charged with PWID, Knowing or Intentionally Possessing a Controlled Substance,[3] and conspiracy, Appellant proceeded on June 13, 2005, to a bench trial, where the Commonwealth presented the testimony of Officers Harris and Alphonso Jett to describe the transactions they witnessed. No defense witnesses took the stand. At the conclusion of trial, the court acquitted Appellant of possessing a controlled substance, but convicted him of PWID and conspiracy. On September 15, 2005, after disposing of Appellant's posttrial motion for extraordinary relief challenging the sufficiency of the evidence as a matter of law, the court conducted a sentencing hearing. The hearing concluded with Appellant receiving a sentence of three to six years in prison, to be followed by one year probation.

¶ 4 This timely appeal followed, and Appellant complied with the trial court's directive to supply a Pa.R.A.P.1925(b) concise statement of matters to be raised on appeal. The trial court has, in turn, filed a responsive Pa.R.A.P.1925(a) opinion. Appellant raises the following issues on appeal:

I.  THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A VERDICT OF GUILT BEYOND A REASONABLE DOUBT ON THE CHARGES OF POSSES-

3.  35 P.S. § 780–113(a)(16).

SION WITH THE INTENT TO DELIVER A CONTROLLED SUBSTANCE AND CRIMINAL CONSPIRACY.

II. THE VERDICT OF GUILT ON THE CHARGES OF POSSESSION WITH INTENT TO DELIVER A CONTROLLED SUBSTANCE AND CRIMINAL CONSPIRACY WAS AGAINST THE WEIGHT OF THE EVIDENCE.

III. THE TRIAL COURT IMPROPERLY SHIFTED THE BURDEN TO DEFENDANT BY REQUIRING HIM TO PRODUCE EVIDENCE OF HIS INNOCENCE.

Brief of Appellant at 3.

¶ 5 Our standard of review when reviewing the sufficiency of the evidence has been recited as follows:

The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the factfinder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Lambert,* 795 A.2d 1010, 1014–15 (Pa.Super.2002) (internal citations and quotation marks omitted).

■ ¶ 6 To sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy. *Commonwealth v. Hennigan,* 753 A.2d 245, 253 (Pa.Super.2000). "This overt act need not be committed by the defendant; it need only be committed by a co-conspirator." *Id.*

■ ¶ 7 As our Court has further explained with respect to the agreement element of conspiracy:

The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circum-

stances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt. Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators in furtherance of the conspiracy.

*Commonwealth v. Johnson*, 719 A.2d 778, 784–85 (Pa.Super.1998) (en banc).

■ ¶ 8 The totality of the evidence taken in a light most favorable to the Commonwealth was sufficient to sustain Appellant's convictions for PWID and conspiracy to deliver. Even though Appellant did not physically handle the drugs transacted, he clearly took an active role in the illicit enterprise. Appellant was observed working as a lookout on Myrtlewood Street during three of the transactions in question, and he received money from his cohort seller immediately after two sales. Indeed, when arrested, Appellant possessed a copious amount of money ($1,508) in small denominations consistent with drug sale proceeds, while, in comparison, the seller possessed only $64.

¶ 9 In contrast to the passive bystander or acquaintance merely present at the scene of a crime, roles which will not sustain a conviction for conspiracy, Appellant actively participated in several crucial respects to enable his cohort to sell crack cocaine to numerous buyers. It was thus appropriate for the fact-finder to infer an agreement between Appellant and his cohort to deliver crack cocaine based upon Appellant's participation in the enterprise carrying out the deliveries. Accordingly, we conclude that all three elements to a criminal conspiracy were sufficiently proven to sustain Appellant's conviction for conspiracy to deliver crack cocaine.

¶ 10 Because Appellant is criminally liable for the actions of his coconspirators, it follows that the evidence sufficed to convict him of PWID as well. Given the evidence of his conspiracy with Mr. Rogers, it is not exculpatory that Appellant never actually handled the drugs or received the buy money directly from buyers when his co-conspirator Mr. Rogers did. As noted above, all conspirators are liable for the actions of other conspirators. *Id.* at 785. As Appellant's co-conspirator clearly delivered the illicit drugs in question, Appellant's conviction for PWID was proven beyond a reasonable doubt. Appellant's sufficiency challenge, therefore, is without merit.

■ ¶ 11 Appellant next asserts a weight of the evidence challenge to his convictions. Before we address this claim, we must first determine whether it has been properly preserved for our review. Pennsylvania Rule of Criminal Procedure 607 provides, in pertinent part, the following:

(A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:

(1) orally, on the record, at any time before sentencing;

(2) by written motion at any time before sentencing; or

(1) in a post-sentence motion.

Pa.R.Crim.P.Rule 607(A). "The purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived." Pa.R.Crim.P. Rule 607, Comment. *See Commonwealth v. Little*, 879 A.2d 293 (Pa.Super.2005).

¶ 12 Our review of the certified record reveals that the motion for extraordinary relief argued on September 15, 2005 challenged only the sufficiency of the evidence as a matter of law. *See* N.T. 9/15/05 at 4. We therefore conclude that Appellant has

waived his challenge to the weight of the evidence.

■ ¶ 13 Finally, Appellant argues that a comment offered by the trial court just prior to reaching verdict demonstrates that the court impermissibly shifted the burden of proof to the defense at trial. We disagree.

¶ 14 After closing argument, the trial court reviewed the evidence before it as follows:

> THE COURT: And there clearly was no evidence that you ever went to the drainpipe where the stash was located, and there was no evidence that you took money from any buyers and no evidence that there were any narcotics found on your person.
>
> But I do find that in this case the totality of the circumstances works more against you than for you.
>
> Had you left the location, had you conducted some other type of activity at that location, had you done anything else to take you away from these four different transactions, perhaps there would be an explanation for why you were there consistently over that hour, but there was no evidence of that type here.
>
> * * * *

N.T. 6/13/05 at 52–3. The trial court amplified its view of the evidence when defense counsel argued that, at most, Appellant could be convicted only for those two transactions for which he immediately received money.

> THE COURT: He was involved to the—he wasn't seen accepting money, but he was involved as the evidence was being the lookout [sic], and he was involved as being observed in that manner as participating.
>
> If he left, I would agree with you. If he went off and talked to someone else, I might agree with you; but there's only

evidence of him standing in that location talking with all four buyers, talking with them. A brief conversation had been initiated, whatever went on, and then looking out in all four.

> So, all four relate back to the stash. To just say that he was involved in the two would ignore the fact that the other two went on while he was being the lookout and conversing with the other two buyers.

N.T. 6/13/05 at 55–6.

¶ 15 As the record establishes, the trial court did not shift the burden of proof from the Commonwealth with this commentary. Rather, the court simply identified that not one piece of evidence detracted from the conclusion to be reached from the totality of the circumstances that Appellant was a committed member to this conspiracy whose role was to stand continuous lookout over the stash of drugs and for the presence of police during the transactions. The court's reflections on the production of evidence were fair commentary on the case, and as such they present no grounds for reversal.

¶ 16 Judgment of sentence is affirmed.