J-S76036-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARY JO SMITH | : | |
| | : | |
| Appellant | : | No. 769 WDA 2018 |

Appeal from the Judgment of Sentence May 15, 2018
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-CR-0000428-2017

BEFORE: BENDER, P.J.E., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.: **FILED JANUARY 03, 2019**

Mary Jo Smith (Appellant) appeals from the judgment of sentence imposed after a jury convicted her of aggravated assault and driving under the influence/high rate of alcohol (DUI).[1] On appeal, Appellant challenges the sufficiency of the evidence underlying her aggravated assault convictions. We affirm.

The trial court recounted the evidence adduced at trial as follows:

On December 5, 2016, at approximately 5:00 to 5:30 p.m., Mr. Alan K. McCutcheon was at his Dunbar Township home [in] Connellsville, Fayette County, Pennsylvania[,] in his front yard decorating for Christmas. [A] Jeep pulled up in front of the house. Mr. McCutcheon did not recognize the vehicle and he could not see who was driving the vehicle. Music was blaring from the Jeep and an individual inside yelled "Merry Fucking Christmas" from the

---

[1] 18 Pa.C.S.A. § 2702(a)(4); 75 Pa.C.S.A. § 3802(b). In addition, the trial court convicted Appellant of reckless driving, 75 Pa.C.S.A. § 3736(a).

open window of the vehicle. Mr. McCutcheon then yelled back asking "who is that?" to which no answer was given. Mr. McCutcheon, beginning to fear imminent harm, continued to try to establish the identity of the individual in the Jeep. Mr. McCutcheon informed the occupant that he [had a gun in the house. N.T. Trial, 5/7/18, at 16.] A female voice responded from the vehicle. The Jeep then began to move toward Mr. McCutcheon . . . entering the yard. The driver of the Jeep turned . . . in the direction of Mr. McCutcheon. Mr. McCutcheon took cover behind a tree. The Jeep proceeded to circle through the yard three times coming at Mr. McCutcheon. . . . As the vehicle circled through the yard, Mr. McCutcheon was able to identify the driver, by her voice and by sight. Mr. McCutcheon identified the driver as the Appellant. Mr. McCutcheon knew the Appellant from a prior relationship which had existed 29 years prior to the events of December 5, 2016. [Mr. McCutcheon had not seen or talked to Appellant for 8 or 10 years. *Id.* at 21.]

All of Mr. McCutcheon's outdoor Christmas decorations were destroyed by the Jeep driving through his yard. After driving through the yard three times, the Jeep drove off down the road. Mr. McCutcheon then got into his truck and drove off. He initially intended to drive to the Connellsville Police station, but realizing his home was located in Dunbar Township, instead called the State Police from the truck. He then called his wife, Mrs. Donna McCutcheon, who was on her way home from work and instructed her not to go to the house until he returned. Mr. and Mrs. McCutcheon arrived back at their home at the same time.

Shortly after the McCutcheon's returned to the house, and approximately fifteen (15) to twenty (20) minutes after the white Jeep had left, the same vehicle returned to the property. The vehicle entered the yard and began coming toward Mrs. McCutcheon who was able to get inside the front door of the home. Appellant missed hitting Mrs. McCutcheon by approximately three (3) feet. Appellant impacted the flower plant and paver stones in front of the house just as Mrs. McCutcheon jumped inside the door. Appellant then drove around the house taking out five (5) shrubs, hit the foundation of the house, entered the back yard, and drove the vehicle into the swimming pool, hitting the pool four (4) or five (5) times. This is where Appellant got the vehicle stuck. However, Appellant got the Jeep out. At this time, Mr. McCutcheon's step-daughter, Hillary, arrived in her car. Appellant ran into the front of Hillary's car in the driveway with Hillary inside

the car. Appellant then backed up and hit Hillary's car again, albeit at a low rate of speed. Appellant exited the Jeep. Hillary exited her vehicle. Appellant came at Hillary with her fists raised. [Hillary recognized Appellant as Mr. McCutcheon's ex-girlfriend. N.T., 5/7/18, at 68.] Hillary then pinned Appellant to the ground. Approximately ten (10) minutes later, the State Police arrived at the scene.

Trial Court Opinion, 7/16/18, at 2-4 (some citations to notes of testimony omitted). A blood alcohol test taken around 7:38 that evening indicated that Appellant had a blood alcohol rate of 0.127%. N.T., 5/7/18, at 102, 114. Further, Mr. McCutcheon testified that the "insurance came to $13,000 worth of damages" to the pool, yard, and front of the house. *Id.* at 32-33.

Appellant was charged with, *inter alia*, two counts each of aggravated assault, simple assault, and recklessly endangering another person (REAP), and one count each of criminal mischief,[2] DUI, and reckless driving. The case proceeded to a two-day jury trial on May 7, 2018. The Commonwealth presented the testimony of Mr. and Mrs. McCutcheon, Hillary, responding police officers, and a neighbor, who is the Connellsville Chief of Police and witnessed Appellant's car "doing donuts and spinning" in the McCutcheons' yard. *See* N.T., 5/7/18, at 72.

Appellant testified in her defense, stating that on the day of the incident, she drank two Long Island iced teas at a "club" and subsequently vodka at another person's home. N.T., 5/7/18, at 127, 137-138. Appellant did not

---

[2] 18 Pa.C.S.A. §§ 2701(a)(1), 2705, 3304(a)(5).

remember leaving that home or driving to the McCutcheons' house. *Id.* at 133, 136, 138. Appellant recalled, however, sitting in her vehicle on the McCutcheons' property, and Mr. McCutcheon talking to her. *Id.* at 134, 136. Appellant did not hear well and thus "pulled up a little bit" to hear him. *Id.* at 134, 136. Appellant did not remember what happened next, but testified that she did not intend to hurt anyone. *Id.* at 134, 143. Appellant recalled "waking up and [Hillary] pounding [her] in the face." *Id.* at 134, 139. Appellant also did not remember signing consent for a blood alcohol test. *Id.* at 135. Finally, Appellant testified that the McCutcheons "ha[d her] children beat," "physically assaulted," and "severely traumatized" for 20 years, that there were "medical records" evidencing such abuse, and that the McCutcheons "had [her] neck almost broke in the middle of Connellsville." *Id.* at 141-142. Appellant also acknowledged that she posted messages on Facebook about the McCutcheons. *Id.* at 141, 143.

The jury found Appellant guilty of two counts each of aggravated assault, simple assault, and recklessly endangering another person (REAP) — all with respect to Mr. and Mrs. McCutcheon — and one count each of criminal mischief and DUI. The jury found Appellant not guilty of simple assault against Hillary. On the same day, the trial court found Appellant guilty of reckless driving. On May 15, 2018, the trial court sentenced Appellant to consecutive sentences of 15 to 30 months of imprisonment for the two aggravated assault convictions; a mandatory 48 hours to 6 months of imprisonment for DUI; and

four years of probation for criminal mischief.

Appellant did not file a post-sentence motion, but took this timely appeal. The trial court ordered Appellant to file a Pa.R.A.P. 1925(b) statement, and she complied, raising a single issue challenging the sufficiency of the evidence. As noted above, the trial court filed an opinion on July 16, 2018.

On appeal, Appellant presents one issue for our review:

WAS THE EVIDENCE LEGALLY AND FACTUALLY INSUFFICIENT TO SHOW THAT [APPELLANT] COMMITTED THE CRIMES?

Appellant's Brief at 7.[3]

Appellant challenges the sufficiency of the evidence underlying her aggravated assault convictions. *See* 18 Pa.C.S.A. § 2702(a)(4) ("attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon"). Appellant claims that she lacked the requisite intent, and that she did not take a substantial step to commit aggravated assault. Appellant maintains she "was only reacting to threats of violence against her," namely Mr. McCutcheon's statement that "he had a gun in the house." Appellant's Brief at 9-10, *citing* N.T., 5/7/18, at 16. Appellant also points out that there was no contact between her car and the McCutcheons, although she acknowledges "that this fact alone does not exonerate her." *Id.* at 10-

_____

[3] The Commonwealth did not file a brief.

- 5 -

We first consider Appellant's court-ordered Rule 1925(b) statement, which states, in entirety: "Whether the evidence was legally and factually sufficient to prove that Defendant committed the crimes for which she was convicted." Appellant's Concise Issues, 6/1/18. The trial court has suggested that this statement "is too vague for the Court to address," and consequently, Appellant has waived the issue on appeal. Trial Court Opinion, 7/16/18, at 5. We agree.

The trial court correctly noted that to preserve a challenge to the sufficiency of the evidence, a Rule 1925(b) statement must state with specificity the element(s) upon which the appellant alleges the evidence was insufficient. *Id.*, *citing* **Commonwealth v. Garland**, 63 A.3d 339, 344 (Pa. Super. 2013). In **Garland**, the defendant was convicted of third-degree murder, possession of an instrument of crime, and two different firearms offenses. **Garland**, 63 A.3d at 341. In his court-ordered Rule 1925 statement, the defendant included the "generic statement[, 'T]he evidence was legally insufficient to support the convictions.'" **Id.** at 344. In his appellate brief, the defendant challenged the sufficiency of the evidence for third-degree murder only. **Id.** This Court, in examining the Rule 1925 statement, noted that specificity of the elements of the offenses "is of particular importance in cases where . . . the [defendant] was convicted of multiple crimes each of which contains numerous elements that the

- 6 -

Commonwealth must prove beyond a reasonable doubt." *Id.* We thus concluded that the defendant waived his sufficiency claim because he "not only failed to specify which elements he was challenging in his Rule 1925(b) statement, he also failed to specify which conviction he was challenging." *Id.* Similarly, in this case, Appellant was convicted of multiple crimes: two counts each of aggravated assault, simple assault, and recklessly endangering another person (REAP), and one count each of criminal mischief, DUI, and reckless driving. Appellant's Rule 1925 statement, however, did not identify any of these offenses or their elements. Accordingly, we conclude that Appellant's issue is waived. *See* Pa.R.A.P. 1925(b)(4); *Garland*, 63 A.3d at 344. We arrive at this conclusion despite the fact that Appellant, like the defendant in *Garland*, challenges only one offense in her appellate brief. *See Garland*, 63 A.3d at 344.

Moreover, even if Appellant had presented an adequate Rule 1925 statement, we would conclude that no relief is due. This Court has explained:

> The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial

evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. McCall*, 911 A.2d 992, 996 (Pa. Super. 2006) (citation omitted).

Appellant was convicted of two counts under the following subsection of the aggravated assault statute: "A person is guilty of aggravated assault if he . . . attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon[.]" 18 Pa.C.S.A. § 2702(a)(4).

The Crimes Code defines a 'deadly weapon' as, *inter alia*, any device which, in the manner in which it is used, is likely to produce death or serious bodily injury. 18 Pa.C.S.A. § 2301. This Court has recognized that although a properly used automobile may not be inherently dangerous it may become a deadly weapon depending on how it is used.

*Commonwealth v. Packard*, 767 A.2d 1068, 1071 (Pa. Super. 2000) (some citations omitted).

The trial court opined, "In light of the facts presented, a finder of fact could reasonably find that intentionally or recklessly driving a motor vehicle directly at individuals in their front yard rises to the level of attempting to cause serious bodily injury." Trial Court Opinion, 7/16/18, at 7. We agree. While Appellant testified at trial that she did not intend to hurt anyone, the jury, which also heard Appellant's testimony that the McCutcheons assaulted and traumatized her and her children for 20 years, was free to believe all, part, or none of Appellant's testimony. *See McCall*, 911 A.2d at 996.

Although Appellant asserts that Mr. McCutcheon's "testimony that he had a gun . . . shows that [her] actions were a reaction to a threat of violence against her," our review of the trial transcript reveals that Appellant did not raise this claim at trial. Instead, Appellant repeatedly testified that she could not recall anything that happened between sitting in her Jeep outside the McCutcheons' house and "waking up" to Hillary hitting her. N.T., 5/7/18, at 134, 139. Additionally, Appellant's argument — that she was merely reacting to Mr. McCutcheon's "threat" — does not address why she returned to the McCutcheons' residence approximately 15 minutes after leaving and drove onto the yard again toward Mrs. McCutcheon, narrowly missing her. The uncontroverted evidence at trial established that Appellant first "circle[d] through the yard three times coming at Mr. McCutcheon," left but returned to the residence 15 minutes later, and then drove "toward Mrs. McCutcheon who was able to get inside the front door of the home." *See* Trial Court Opinion, 7/16/18, at 3-4. Viewed in the light most favorable to the Commonwealth, the evidence was sufficient to support the jury's finding that Appellant attempted to cause bodily injury to Mrs. and Mrs. McCutcheon with a deadly weapon. 18 Pa.C.S.A. § 2702(a)(4); *McCall*, 911 A.2d at 996; *Packard*, 767 A.2d 1071.

For these reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/3/2019